**IN THE UNITED STATES DISTRIC COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DR. EMANUELA BARZI, an Individual,

    Plaintiff,

v.

FERMI RESEARCH ALLIANCE, LLC, et. al

    Defendants.

Case No. 25-CV-09247

Honorable Virginia M. Kendall,
District Judge

Magistrate Judge Beth W. Jantz

**<u>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

BACKGROUND....................................................................................................................1

ARGUMENT.......................................................................................................................3

    I.    The Court Should Dismiss the Second Amended Complaint With Prejudice Under Rule 8.....................................................................................................................3

    II.    The Court Should Dismiss With Prejudice Plaintiff's Unamended and Abandoned Claims. ...................................................................................................................4

    III.    The Court Should Dismiss Plaintiff's Disability Discrimination Claim With Prejudice for Failure to Plead Sufficient Facts (Count V)....................................................4

    IV.    The Court Should Dismiss with Prejudice Plaintiff's Aiding and Abetting Claims (Count VII)...........................................................................................................6

    V.    The Court Should Dismiss Plaintiff's Retaliation for Protected Speech Claim (Count IX)........................................................................................................................8

        A.    Plaintiff's Amended Allegations Fail to Plausibly Allege State Action. ...............................................................................................................9

        B.    Plaintiff's Claim Otherwise Fails to State a Claim................................10

        C.    Plaintiff's Equal Protection Claim Fails as a Matter of Law...............11

    VI.    The Court Should Dismiss Plaintiff's § 1981 Claim With Prejudice (Count X)........12

        A.    Plaintiff Pleads Herself Out of Court on Causation. .........................13

        B.    Plaintiff's Allegations Conflate National Origin and Ancestry. .........14

        C.    Plaintiff Improperly Group Pleads the Individual Defendants. ........15

        D.    The Retaliation Theory Fails for the Same Reasons. ..........................16

    VII.    The Court Should Dismiss Plaintiff's Claim for Breach of Implied Contract (Count XI)......................................................................................................................17

    VIII.    The Court Should Dismiss Plaintiff's Promissory Estoppel Claim (Count XI-A).....22

    IX.    The Court Should Dismiss Plaintiff's Retaliatory Discharge Claim (Count XII).......23

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-Abart Elec. Supply v. Emerson Elec. Co.,*
956 F.2d 1399 (7th Cir. 1992) ........................................................................22

*Arevalo-Carrasco v. Middleby Corp.,*
851 F. App'x 628 (7th Cir. 2021)................................................................. 14, 15

*Arora v. Nav Consulting Inc.,*
2022 WL 7426211 (N.D. Ill. Oct. 13, 2022).................................................. 12, 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................3

*Bannon v. Univ. of Chi.,*
503 F.3d 623 (7th Cir. 2007)..........................................................................24

*Brown v. Biomat USA, Inc.,*
2021 WL 3187599 (N.D. Ill. July 28, 2021ue........................................................24

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,*
589 U.S. 327 (2020))................................................................................ 12, 13

*Connick v. Myers,*
461 U.S. 138 (1983)......................................................................................11

*Darchak v. City of Chi. Bd. of Educ.,*
580 F.3d 622 (7th Cir. 2009)..........................................................................25

*Doe v. Fertility Centers of Ill., S.C.,*
2022 WL 972295 (N.D. Ill. Mar. 31, 2022) .......................................................17

*Duldulao v. St. Mary of Nazareth Hosp. Ctr.,*
115 Ill. 2d 482 (1987) ......................................................................... 18, 20, 21

*Dumas v. Infinity Broad. Corp.,*
416 F.3d 671 (7th Cir. 2005)...........................................................................23

*Dynegy Mktg. & Trade v. Multiut Corp.,*
648 F.3d 506 (7th Cir. 2011)...........................................................................17

*EEOC v. Concentra Health Servs.,*
496 F.3d 773 (7th Cir. 2007)...........................................................................17

*Est. of Jesmer v. Rohlev,*
    241 Ill. App. 3d 798 (1st Dist. 1993)...................................................................17

*Fellhauer v. City of Geneva,*
    142 Ill. 2d 495 (1991))...................................................................24

*Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.,*
    412 F.3d 745 (7th Cir. 2005)................................................................... 3, 4

*Fox v. DuPage Twp.,*
    2024 WL 4835902 (N.D. Ill. Nov. 20, 2024)...................................................................20

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)...................................................................10

*Gibson v. Hum. Rts. Comm'n,*
    2025 IL App (4th) 240955-U...................................................................8

*Hicks v. Resol. Tr. Corp.,*
    970 F.2d 378 (7th Cir. 1992)...................................................................23

*Hill v. Target Corp.,*
    2025 WL 919614 (N.D. Ill. Mar. 26, 2025)...................................................................13, 14

*Hogge v. Champion Laboratories, Inc.,*
    190 Ill. App. 3d 620 (5th Dist. 1989)...................................................................19

*Houston v. JP Morgan Chase & Co.,*
    2026 WL 26129 (N.D. Ill. Jan. 5, 2026)...................................................................13

*Ibarra v. Northwestern Univ.,*
    2026 WL 1662227 (N.D. Ill. June 9, 2026)................................................................... 13, 15

*In re Gallagher Data Breach Litig.,*
    631 F. Supp. 3d 573 (N.D. Ill. 2022)...................................................................17

*In the Matter of the Request for Review by: Eliseo Patino, Petitioner,*
    2018 WL 6071676  (Ill. Hum. Rts. Comm'n July 24, 2018) ...................................................................6

*In the Matter of the Request for Review by: Penney Washington, Petitioner,*
    2023 WL 8192639 (Ill. Hum. Rts. Comm'n Nov. 21, 2023)...................................................................6

*Ivory v. Specialized Assistance Servs., Inc.,*
    365 Ill. App. 3d 544 (2006) ...................................................................18, 21

*Jacobson v. Knepper & Moga, P.C.*,
185 Ill. 2d 372 (1998) ................................................................................................ 24, 25

*Katz v. Nw. Orthopedics & Sports Med. Ltd.*,
2020 WL 1986965 (N.D. Ill. Apr. 27, 2020)....................................................................20

*L.P. v. Marian Cath. High Sch.*,
852 F.3d 690 (7th Cir. 2017)................................................................................... 10, 12

*M.U. v. Team Ill. Hockey Club, Inc.*,
2022 IL App (2d) 210568..............................................................................................7

*Maksimovic v. Tsogalis*,
177 Ill. 2d 511 (1997) ................................................................................................24

*Matter of: Thaddeus Taylor, Jr.*,
1992 WL 721996 (Ill. Hum. Rts. Comm'n April 6, 1992) .................................................6

*McConnell v. Howard Univ.*,
818 F.2d 58 (D.C. Cir. 1987)........................................................................................21

*Michael v. Precision All. Grp., LLC*,
2014 IL 117376 ..........................................................................................................23

*Moore v. Ill. Bell Tel. Co.*,
155 Ill. App. 3d 781, 784–85 (2d Dist. 1987) ................................................................19

*Morris v. Office Max, Inc.*,
89 F.3d 411, 413 (7th Cir. 1996)) ................................................................................12

*Motykie v. Motykie*,
2025 WL 2160719 (N.D. Ill. July 30, 2025)...................................................................10

*Naeem v. McKesson Drug Co.*,
444 F.3d 593 (7th Cir. 2006).......................................................................................25

*Newton Tractor Sales v. Kubota Tractor Corp.*,
233 Ill. 2d 46 (2009) ............................................................................................. 22, 23

*Nw. Mem'l Healthcare v. Anthem Ins. Cos., Inc.*,
2022 WL 1620025 (N.D. Ill. May 23, 2022) ..................................................................18

*Palmateer v. Int'l Harvester Co.*,
85 Ill. 2d 124 (1981) .............................................................................................. 24, 25

*Peaster v. McDonald's Corp.*,
2023 WL 5387573 (N.D. Ill. Aug. 22, 2023) .................................................................12

*Perry v. Sindermann,*
    408 U.S. 593 (1972) .................................................................................................21

*Piccioli v. Plumbers Welfare Fund Local 130, U.A.,*
    2020 WL 6063065 (N.D. Ill. Oct. 14, 2020)) .......................................................12

*Pickering v. Bd. of Educ.,*
    391 U.S. 563 (1968) .................................................................................................11

*Regan v. Adolf,*
    2025 WL 2604755 (N.D. Ill. Sep. 9, 2025) ............................................................3

*Rendell-Baker v, Kohn,*
    457 U.S. 830 (1982) .................................................................................................11

*Saint Francis Coll. v. Al-Khazraji,*
    481 U.S. 604 (1987) .................................................................................................15

*Shah v. Hy-Vee, Inc.,*
    2026 WL 221884 (N.D. Ill. Jan. 28, 2026) ...........................................................13

*Shebley v. United Cont'l Holdings, Inc.,*
    357 F. Supp. 3d 684 (N.D. Ill. 2019) .....................................................................12

*Shofner v. Branding Iron Holdings, Inc.,*
    2016 WL 879630 (S.D. Ill. Mar. 8, 2016) .............................................................17

*Spiegel v. McClintic,*
    916 F.3d 611 (7th Cir. 2019) ...................................................................................11

*Sutula-Johnson v. Office Depot, Inc.,*
    893 F.3d 967 (7th Cir. 2018) ............................................................ 18, 19, 20, 21

*Tarkowski v. Robert Bartlett Realty Co.,*
    644 F.2d 1204 (7th Cir. 1980) ................................................................................11

*Tate v. SCR Med. Transp.,*
    809 F.3d 343 (7th Cir. 2015) .....................................................................................5

*Upadhya v. Langenburg,*
    834 F.2d 661 (7th Cir. 1987) ...................................................................................21

*Vang v. State Farm Mut. Auto. Ins. Co.,*
    2021 WL 5761002 (C.D. Ill. Dec. 3, 2021) ...........................................................12

*Wade v. Byles,*
    83 F.3d 902 (7th Cir. 1996) .....................................................................................11

*Wagoner v. Lemmon,*
  778 F.3d 586 (7th Cir. 2015)..............................................................................5

*Williams v. Chi. Transit Auth.,*
  2024 WL 3455022 (N.D. Ill. July 18, 2024)........................................................5

*Workman v. United Parcel Serv., Inc.,*
  234 F.3d 998, (7th Cir. 2000)............................................................................22

*Yapp v. Astellas Pharma Glob. Dev., Inc.,*
  2015 WL 1326371 (N.D. Ill. Mar. 20, 2015) ....................................................25

*Young v. Associated Bank Nat'l Ass'n,*
  2025 WL 1282747 (N.D. Ill. May 3, 2025)........................................................23

## Statutes

42 U.S.C. § 1981........................................................... 2, 12, 13, 14, 15, 16, 17,

42 U.S.C. § 1983.............................................................................................. 2, 8

775 ILCS 5/7A-102..........................................................................................24

775 ILCS 5/8-111 ............................................................................................24

775 ILCS 5/8A-104..........................................................................................24

## Other Authorities

10 C.F.R. Parts 708 and 733...........................................................................25

Fed. R. Civ. P. 8(a)(2) ................................................................................... 1, 3

Fed. R. Civ. P. 8(d)(1) ................................................................................... 1, 3

Fed. R. Civ. P. 8(d)(1) ........................................................................................3

Fed. R. Civ. P. 12(b)(6) ................................................................................. 3, 5

Plaintiff Emanuela Barzi has now filed a third complaint in this lawsuit, which arises from her employment and ultimate termination as a scientist at Fermilab. Like her previous pleadings, Plaintiff's second amended complaint alleges a laundry list of transgressions by the lab and by various supervisors that span 27 years, most of which have been appropriately dismissed as untimely. In an effort to revive claims dismissed previously by the Court, Plaintiff's new complaint adds pages of allegations in a new pleading that spans 141 single-spaced pages, with 343 paragraphs and 9 exhibits. Plaintiff's second amended complaint, however, not only fails to resuscitate her dismissed claims, it blatantly flouts Federal Rule 8, which requires that complaints allege a "short and plain statement of the claim" employing allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1). Accordingly, as demonstrated below, the Court should dismiss Plaintiff's amended complaint with prejudice, or alternatively and at a minimum, dismiss her amended claims with prejudice.[1]

**BACKGROUND**

Defendants will not recapitulate in this brief Plaintiff's endless allegations, which are largely set forth in the Court's recent opinion and in Defendants' brief supporting their prior motion to dismiss. (*See* Dkts. 41 at 1-13; 33 at 1-8.) Plaintiff's new allegations will be addressed where relevant to the discussion of each amended claim.

### Plaintiff's First Amended Complaint

Plaintiff's first amended complaint asserted 12 causes of action: (I) unlawful sex discrimination under Title VII and the Illinois Human Rights Act ("IHRA") against Defendant Fermi Research Alliance, LLC ("FRA"); (II) unlawful sexual harassment and hostile work environment under Title VII and the IHRA against FRA; (III) national origin discrimination under Title VII and the IHRA against FRA; (IV) discrimination under the Age Discrimination in

---

[1] The Court granted Defendants' request to file a single brief not to exceed 25 pages. (Dkt. 50.)

Employment Act ("ADEA") and the IHRA against FRA; (V) disability discrimination under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the IHRA against FRA; (VI) retaliation under Title VII, the ADA, the ADEA, and the IHRA against FRA; (VII) aiding and abetting discrimination and retaliation under the IHRA against the Individual Defendants; (VIII) retaliation in violation of the Illinois Whistleblower Act against FRA; (IX) retaliation for protected First Amendment speech and for citizen speech on matters of public concern under 42 U.S.C. § 1983 against the Individual Defendants; (X) Equal Protection and § 1983 conspiracy against the Individual Defendants as well as § 1981 against FRA and the Individual Defendants, alleging intentional interference with the making and enforcement of Plaintiff's employment contract and retaliation tied to her ethnicity and ancestry; (XI) breach of implied contract against FRA; and (XII) breach of DOE Prime Contract as a third-party beneficiary; or, in the alternative, retaliatory discharge in violation of Illinois public policy against FRA. (Dkt. 8 ¶¶ 94-217.)

### The Court's Memorandum Opinion & Order

Defendants moved to dismiss Plaintiff's first amended complaint (Dkts. 32, 33), which the Court granted in part and denied in part in a comprehensive 53-page opinion (Dkt. 41). The Court denied Defendant's motion on Counts I, II, IV, V (failure to accommodate claim), VI, and VIII. The Court granted Defendants' motion and dismissed without prejudice Counts III, V (intentional discrimination claim), VII, IX, X, XI, XII, and any purported claim under the Equal Pay Act. (*See id.* at 53.) The Court also dismissed with prejudice any IHRA claims arising from conduct that occurred before March 6, 2014, and any federal claims arising from conduct that occurred before April 6, 2024 (except her claims for retaliation and hostile work environment). (*Id.* at 23-24.)

### Plaintiff's Second Amended Complaint

The second amended complaint purportedly "clarifies and supplements allegations relevant to the claims Plaintiff repleads or strengthens in light of the Court's Order." (Dkt. 46 at 1.) In so

doing, Plaintiff's new pleading adds *34* pages of allegations, *126* paragraphs, and *7* exhibits comprising another *62* pages. (*Id.*)

Plaintiff seeks several remedies, including declaratory and injunctive relief, reinstatement or front pay, back pay, compensatory and (where permitted) punitive damages, prejudgment interest, liquidated damages under the ADEA, attorneys' fees and costs, expungement of unlawful discipline, and successor-based equitable relief as to Defendant Fermi Forward. (*Id.* at 68-70.)

## ARGUMENT

### I. The Court Should Dismiss the Second Amended Complaint With Prejudice Under Rule 8.

As a threshold matter, the Court should dismiss the second amended complaint under Rule 8. That provision requires a "short and plain statement of the claim," and that each allegation be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1). A Rule 12(b)(6) motion is a proper vehicle for challenging whether a complaint satisfies Rule 8's pleading requirements. *Regan v. Adolf*, 2025 WL 2604755, at *4 (N.D. Ill. Sep. 9, 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although dismissal with prejudice is reserved for the "rare case," a district court may dismiss a complaint that is "sprawling, confusing, [and] redundant." *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005). Moreover, a confusing pleading is not ordinarily fatal, but it may become so after repeated failures to plead intelligibly. *Id.*

Here, the second amended complaint is the furthest thing from "simple, concise, or direct" — nor does it in any way offer a "short and plain statement of the claim." Instead, Plaintiff's pleading is comprised of 71 pages of allegations, 343 paragraphs (rife with multiple long sentences in several paragraphs), 9 exhibits, and 141 pages overall. And in reality, the complaint itself is double that length because it is *single spaced*, in violation of the Court's rules. *See* L.R. 5.2(e) (requiring 2.0 spacing). Moreover, the second amended complaint also contains several long, confusing sentences (e.g., ¶ 209 is 152 words) and repeatedly and redundantly alleges non-discernible generalities that

3

conflate legal claims. (*See id.* at 1; ¶¶ 23, 24, 28, 29, 29A, 46A, 51, 83, 94, 136, 228, 250, 329 (repeatedly tying allegations to multiple concepts and claims, such as "background, notice, motive, pattern, intent, causation, pretext, comparator evidence, hostile-environment context, and damages.").) At bottom, Plaintiff's amended pleasing is "sprawling, confusing, [and] redundant," *Fidelity National Title*, 412 at 749, and therefore deprives Defendants of fair notice of her claims.

Dismissal with prejudice is justified, as Plaintiff has already amended her complaint twice, with her latest and operative pleading being the lengthiest, most confusing, and redundant yet. Under these circumstances, the Court should not give Plaintiff a fourth bite at the apple and dismiss with prejudice.

## II. The Court Should Dismiss With Prejudice Plaintiff's Unamended and Abandoned Claims.

Putting Rule 8 aside, the Court should dismiss with prejudice two claims that Plaintiff failed to address or amend: (i) national origin discrimination under Title VII and the IHRA (Count III); and (ii) any claim under the Fair Pay Act. Plaintiff did not amend or add any allegations to plausibly demonstrate that her national origin claim is administratively exhausted or to plead facts sufficient to state a claim. (*See* Dkt. 46 at 1 & ¶ 25 (omitting national origin claim in list of amended and exhausted claims); *id.* at 37 (omitting claim from second amended complaint, noting that "Count III is intentionally omitted to preserve the count numbering used in prior pleadings and the Court's May 1, 2026 Memorandum Opinion and Order.").) Similarly, the new pleading makes no mention of the Fair Pay Act, striking the provision that referenced the Act in the first amended complaint. (*See* Dkt. 8, ¶ 25 (referencing Fait Pay Act). Thus, the Court should dismiss these claims with prejudice.

## III. The Court Should Dismiss Plaintiff's Disability Discrimination Claim With Prejudice for Failure to Plead Sufficient Facts (Count V).

The Court should once again dismiss Plaintiff's disability discrimination claim—this time with prejudice—because the second amended complaint fails to allege sufficient facts to plausibly

demonstrate that FRA discriminated against her based on her PTSD. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff alleging disability discrimination under the ADA must allege that she "is disabled within the meaning of the [ADA], is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of [her] disability." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015); *see also Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (same elements under the Rehabilitation Act).

In dismissing this claim the first time, the Court held as follows:

> Barzi fails to state a claim for intentional discrimination under the ADA, IHRA, and Rehabilitation Act. Barzi alleges that upper management manipulated her performance evaluations to give her a low rating, excluded her from opportunities, and terminated her based, in part, on her disability. . . These conclusory allegations are not enough to plead a disability discrimination claim.

(Dkt. 41 at 31.)

Plaintiff tries to add meat on the bones by adding two paragraphs of allegations, including that FRA HR and management (i)"knew of Plaintiff's PTSD, medical-confidentiality concerns, and accommodation requests"; (ii) "participated in, reinforced, or relied upon a negative narrative portraying Plaintiff as disruptive, unstable, unreliable, dishonest, not credible, or professionally unsafe"; and (iii) then "used" this narrative to ultimately terminate her. (Dkt. 46 at ¶ 201.) None of this alleges any concrete *fact* connecting her disability and FRA's decision to terminate her—the allegations just add generic verbs that are just as conclusory as her prior insufficient allegations. *See Williams v. Chi. Transit Auth.*, 2024 WL 3455022, at *5 (N.D. Ill. July 18, 2024). Plaintiff also relies upon and attaches the September LITWG 2024 committee agenda as "relevant context" that "further supports" that she "was subjected to disability-related stigma, discipline, downgraded evaluation, termination, and access restrictions." (*Id.* at ¶ 202; Ex. I).) But this agenda proves nothing: it makes no mention of anything related to Plaintiff's disability or her claim and does not

substantiate a plausible claim. (*See id.* (acknowledging the "LITWG agenda alone" does not prove her disability was discussed at the meeting).)

For these reasons, the Court should dismiss Count V with prejudice.

**IV.    The Court Should Dismiss with Prejudice Plaintiff's Aiding and Abetting Claims (Count VII).**

The Court dismissed this claim initially "for failure to exhaust administrative remedies." (Dkt. 41 at 18-19.) Although Plaintiff has now exhausted this claim, its other deficiencies remain: (i) the Individual Defendants are not proper aiding- and- abetting defendants; and (ii) Plaintiff fails to plead sufficient facts to establish a plausible aiding and abetting claim.

*First*, the Court should dismiss this claim with prejudice because the Individual Defendants are alleged to have acted solely in their official capacities as FRA personnel. But the Illinois Human Rights Commission has held repeatedly that company employees or officials are not proper respondents to charges of "aiding and abetting" or "retaliation" when the challenged conduct occurred in their capacity as agents of the employer. *See In the Matter of the Request for Review by: Penney Washington, Petitioner*, 2023 WL 8192639, at *2 (Ill. Hum. Rts. Comm'n Nov. 21, 2023); *In the Matter of the Request for Review by: Eliseo Patino, Petitioner*, 2018 WL 6071676, at *2 (Ill. Hum. Rts. Comm'n July 24, 2018); *Matter of: Thaddeus Taylor, Jr.*, 1992 WL 721996, at *1 (Ill. Hum. Rts. Comm'n April 6, 1992).

Here, the second amended complaint's own allegations confirm that each Individual Defendant acted solely in an official managerial capacity as an FRA employee, and not a single allegation describes conduct by any Individual Defendant that falls outside the scope of their official FRA duties:

- Defendant Merminga is alleged to have "knowingly approved, permitted, or ratified" the ALD selection, the HR process, the Final Written Warning, and the RIF selection. (Dkt. 46 ¶ 222.) These are quintessential directorial executive functions that were performed as Fermilab's Director.

6

- Defendant Fleming allegedly used "her Deputy Director authority to block Plaintiff's scientific visibility." (*Id.* ¶ 223.) This is conduct expressly tied to her official title and management role.

- Defendant Gourlay is alleged to have attempted to replace Plaintiff as principal investigator and to have "knowingly implemented, encouraged, ratified, or substantially assisted" various personnel actions. (*Id.* ¶ 225.) These are actions taken in his capacity as Division Head with supervisory authority.

- Defendant Velev allegedly "supplied, influenced, reinforced, or supported internal evaluations" (*id.* ¶ 226), i.e., participated in the employer's performance-review process, an action plainly within the scope of his official duties.

- Defendant Fancsali allegedly used "FRA's legal, HR, and cross-functional channels" and "identif[ied] Plaintiff by name to Senior Leadership." (*Id.* ¶¶ 227-28). Again, these are actions performed in her role as Deputy General Counsel/General Counsel.

- Defendant Posen allegedly "used, or permitted the use of, his scientific-management authority to participate in, support, ratify, or substantially assist" FRA's decisions. (*Id.* ¶ 273.) This is conduct plainly tied to his managerial role as Associate Laboratory Director.

Under the Commission's controlling authority, the individual employees who carried out the employer's decisions in their official capacities cannot be sued for those actions. And because the second amended complaint does not and cannot cure this structural defect, the Court should dismiss the claim with prejudice.

***Second***, Plaintiff fails to plead sufficient facts to establish a plausible aiding and abetting claim. For this claim, Plaintiff must "allege facts to establish that there was an underlying violation of the Act and that each [Individual Defendant] aided, abetted, compelled, or coerced [another] to violate the Act." *M.U. v. Team Ill. Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶ 46. Although the IHRA itself does not explicitly define the elements required to establish a claim, courts have required plaintiffs to plead and ultimately establish the following:

> "(1)) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be regularly aware of his or her role as part of the

7

overall or tortious activity at the time he or she provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation."

*Id.* (citation omitted); *see also Gibson v. Hum. Rts. Comm'n*, 2025 IL App (4th) 240955-U, ¶¶ 57, *appeal denied,* 2025 WL 3302632 (Ill. Nov. 26, 2025) (affirming dismissal due to no underlying violation of the Act).

Here, the second amended complaint does not plead individualized acts by the Individual Defendants of knowing and substantial assistance to a discrete IHRA violation. Although Plaintiff now purports to include Defendant-specific allegations (Dkt. ¶¶ 222-31) that were absent from the prior pleading, the substance of those allegations remains generic and conclusory. Indeed, each allegation deploys a boilerplate disjunctive verb list, including, "knowingly approved," "permitted," "facilitated," "encouraged," "influenced ratified," "escalated," "implemented," "concealed," or "substantially assisted." (*See id.*) This repetitive formula is applied interchangeably to each Individual Defendant without any specifics or nuance regarding their distinct roles, knowledge, or conduct. These amended allegations therefore add nothing to plead sufficient facts to plausibly state a claim for aiding and abetting. *See Gibson*, 2025 IL App (4th) 240955-U, ¶¶ 57-58.

For these reasons, the Court should dismiss Count VII with prejudice.

## V. The Court Should Dismiss Plaintiff's Retaliation for Protected Speech Claim (Count IX).

Plaintiff alleges that Individual Defendants Merminga, Fleming, Posen, Gourlay, Velev, and Fancsali retaliated against her for engaging in protected speech in violation of the First Amendment under 42 U.S.C. § 1983. This Court dismissed this claim previously because Plaintiff failed to plausibly allege that the Individual Defendants acted under color of state law. (Dkt. 41 at 41-42.) In so doing, the Court concluded that Plaintiff "has not alleged that the state was involved in the unconstitutional conduct at the core of her First Amendment claim—excluding her from leadership roles, blocking her from speaking opportunities, issuing a warning against her, and terminating her."

8

(*Id.* at 41.) The Court emphasized that Plaintiff was working remotely when she was terminated, that she was not escorted by any deputies, and that "[t]here are no allegations that any deputies or other state employees were involved with the adverse employment actions [she] claims the Individual Defendants took against her." (*Id.*)

### A. Plaintiff's Amended Allegations Fail to Plausibly Allege State Action.

Plaintiff attempts to cure this defect with four categories of new allegations, none of which plausibly allege state participation in those employment decisions. First, Plaintiff attaches an October 2024 Memorandum of Understanding between Fermilab and the DuPage County Sheriff's Office and alleges that two uniformed DuPage County deputies were paid $1,700 by Fermilab to provide an outside-security detail on November 12, 2024 (the date of the reduction in force). (Dkt. 46 Ex. F.) Second, the second amended complaint references a March 2024 Kane County incident in which deputies responded to Fermilab after a terminated contractor refused to leave the property and subsequently arrested him for criminal trespass. (*Id.* Ex. G.) Third, it attaches Kane County/Fermilab Memorandum of Understanding and law-enforcement coordination materials from 2025–2026 describing Fermilab's law-enforcement arrangements with Kane County. (*Id.* Ex. H.) Fourth, it references the September 2024 LITWG agenda involving representatives from Legal, Human Resources, Security, Communications, Occupational Medical, and other functions, which Plaintiff characterizes as evidence of coordinated monitoring, security escalation, and access-control activities. (*Id.* Ex. L.)

None of these allegations cure the core defect identified by the Court: her failure to allege that any state actor participated in the allegedly unconstitutional employment actions at issue—namely, excluding her from leadership roles, blocking speaking opportunities, issuing discipline, and terminating her employment. (Dkt. 41 at 41.) And Plaintiff's amended pleading still fails to allege that any deputy or other state official participated in those decisions. Indeed, all four categories of

9

new allegations concern routine security, access-control, and law-enforcement coordination. The DuPage County MOU and paid deputy detail describe a private employer arranging building security during a large-scale personnel event; the March 2024 Kane County trespass incident involved a different individual, in a different context, months before Plaintiff's termination; the additional MOU materials memorialize an ongoing law-enforcement relationship for routine security purposes; and the LITWG agenda simply reflects coordination among internal Fermilab personnel. None of these allegations plausibly suggests that any state actor participated in, directed, or influenced the decisions to exclude Plaintiff from leadership opportunities, discipline her, evaluate her performance, or terminate her employment. *See L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 697 (7th Cir. 2017) (no state action where there were no allegations that the state "had anything to do with" the alleged unconstitutional conduct); *Motykie v. Motykie*, 2025 WL 2160719, at \*5 (N.D. Ill. July 30, 2025) ("Private actors do not act under the color of law merely by requesting the assistance of the law.") (citation modified)).

Two other points further undermine the plausibility of any claim to state action: Plaintiff continues to allege that she "was working remotely on the date of her termination" (Dkt. 46 ¶ 89), and, as the Court previously observed, she "does not allege that she was escorted from Fermilab by any deputies." (Dkt. 41 at 41.)

### B. Plaintiff's Claim Otherwise Fails to State a Claim.

Plaintiff's claim also fails for two other reasons: (i) Plaintiff is not a public employee and is suing private actors; and (ii) she fails to plead personal involvement by any Individual Defendant in any alleged constitutional deprivation.

*First*, Plaintiff is not a public employee who is entitled to First Amendment protection. Indeed, the First Amendment protects a public employee's right to speak as a citizen about matters of public concern under certain circumstances. *See Garcetti v. Ceballos,* 547 U.S. 410, 416-17 (2006);

*Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Plaintiff does not allege that she is a public employee. Instead, she alleges expressly that she was employed by FRA, a private entity formed by the University of Chicago and Universities Research Association, Inc., which manages Fermilab under a contract with DOE. (Dkt. 46 ¶¶ 1-2.) A private entity performing a function that serves the public does not transform its conduct into state action. *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). In this case, the fact that FRA operated Fermilab under a federal contract does not convert FRA employees into government employees. *See Rendell-Baker v, Kohn*, 457 U.S. 830, 841-42 (1982) ("Acts of such private contractors do not become acts of government by reason of their significant or even total engagement in performing public contracts."). Thus, the Court can and should dismiss this claim on this basis as well.

*Second*, Plaintiff still fails to allege that any Individual Defendant personally directed, agreed with, or coordinated with law enforcement to violate her rights. Without allegations of "a concerted effort" or "a mutual understanding" directed "toward an unconstitutional action," there is no joint action. *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019); *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980). Here, the second amended complaint's allegations concerning badge deactivation, email cutoff, and access restrictions describe routine post-termination offboarding measures imposed by FRA as a private employer—not actions taken jointly with state actors in furtherance of a shared unconstitutional goal. (Dkt. 46 ¶¶ 246, 248, 251, 255.) This deficiency also dooms Plaintiff's claim.

### C. Plaintiff's Equal Protection Claim Fails as a Matter of Law.

Plaintiff also expands Count IX to include an Equal Protection claim under § 1981. The second amended complaint alleges that Defendants intentionally discriminated against Plaintiff on the basis of sex and her Italian ethnicity and ancestry and incorporates the same adverse employment actions underlying her discrimination claims, including promotion decisions, discipline,

performance evaluations, and termination. (Dkt. 46 ¶¶ 243, 249-50.) This claim fails for the same reason as her retaliation claim: insufficient facts to plausibly allege state action. *See, e.g.*, *L.P.*, 852 F.3d at 696–97. Because the new allegations do not establish state participation in the promotion decisions, disciplinary actions, performance evaluations, or termination at issue, the Equal Protection claim fails for the same reason as her First Amendment claim.

**VI.     The Court Should Dismiss Plaintiff's § 1981 Claim With Prejudice (Count X).**

To state a claim under Section 1981, Plaintiff must allege that (i) she is member of a racial or ethnic minority, (ii) Defendants intended to discriminate against her on the basis of her race or ethnicity, and (iii) the alleged discrimination relates to the making and forming of a contract. *See Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 691-92 (N.D. Ill. 2019) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)). National origin is not protected under § 1981, but ethnicity is. *Vang v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5761002, at *9 (C.D. Ill. Dec. 3, 2021). Notably, a plaintiff proceeding under Section 1981 must plead facts sufficient to plausibly allege that ethnicity was a but-for cause of her injury. *See Peaster v. McDonald's Corp.*, 2023 WL 5387573, at *3 (N.D. Ill. Aug. 22, 2023) (citing *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 333 (2020)). The "ethnicity-based discrimination must have been the determinative reason" for the adverse action. *Vang*, 2021 WL 5761002, at *9. "Put differently, a plaintiff cannot survive a motion to dismiss upon a showing that [ethnicity] discrimination was one factor among many in a defendant's decision." *Arora v. Nav Consulting Inc.*, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022) (citing *Piccioli v. Plumbers Welfare Fund Local 130, U.A.*, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020)). "Allegations that defendants' actions were purposefully discriminatory and [ethnically] motivated are essential to allege a claim under Section 1981." *Houston v. JP Morgan Chase & Co.*, 2026 WL 26129, at *8 (N.D. Ill. Jan. 5, 2026). As such, conclusory and naked allegations of discrimination

are insufficient, and fact-specific allegations of a causal link between the defendant's actions and the plaintiff's ethnicity are required. *Id.*

This Court dismissed the § 1981 claim alleged in the first amended pleading because Plaintiff "assert[ed] not one but five causes of Defendants' alleged misconduct—sex discrimination, national origin discrimination, age discrimination, disability discrimination, ethnicity-based discrimination," and failed to plead that her Italian ethnicity was the but-for cause of the adverse actions. (Dkt. 41 at 44.) The Court noted that Plaintiff "does not properly plead in the alternative—she claims that she was discriminated against because of her sex, age, national origin, ethnicity, and disability." (*Id.* at 44 n.6 (citing *Arora*, 2022 WL 7426211, at *3; *Hill v. Target Corp.*, 2025 WL 919614, at *5 n.9 (N.D. Ill. Mar. 26, 2025)).)

**A.   Plaintiff Pleads Herself Out of Court on Causation.**

Plaintiff's amended pleading merely adds a single sentence: "Plaintiff pleads this § 1981 theory in the alternative to her sex, age, disability, retaliation, and other claims and does not seek double recovery." (Dkt. 41 ¶ 268.) This cursory addition does not salvage her claim. Indeed, as this Court itself observed recently, merely inserting the words "in the alternative" is insufficient to satisfy *Comcast*'s but-for standard where, as here, the substantive factual allegations still assert that multiple protected and unprotected characteristics jointly caused the same adverse actions. *See Ibarra v. Northwestern Univ.*, 2026 WL 1662227, at *5 (N.D. Ill. June 9, 2026) ("By claiming that he was discriminated against because of his race and socioeconomic status, [plaintiff] has plead himself out of Court."); *Shah v. Hy-Vee, Inc.*, 2026 WL 221884, at *5 (N.D. Ill. Jan. 28, 2026) (plaintiff failed to plead but-for causation where his complaint "consistently merge[d] multiple reasons for discrimination, suggesting that his discrimination was due to some combination of race, sex, disability, retaliation, or other factors"); *Arora*, 2022 WL 7426211, at *3 ("[Plaintiff] does not really plead in the alternative; rather, he asserts that race, ethnicity, national origin, and citizenship-status

13

all motivated Defendants' actions . . . .") (emphasis removed); *Hill*, 2025 WL 919614, at *5 n.9 (no alternative pleading where plaintiff brought the same allegations in support of her § 1981 claim and her gender discrimination claim).

For her Section 1981 claim, Plaintiff alleges that Defendants discriminated against her because of her Italian ethnicity and ancestry by treating her Italian academic credentials and Italian-trained background as "markers of lesser credibility, legitimacy, leadership suitability, and advancement eligibility." But throughout her pleading, Plaintiff simultaneously alleges that the same adverse employment actions—including her failure to be promoted and her termination—resulted from discrimination based on her sex, age, disability, and retaliation for protected activity. Indeed, the second amended complaint's supporting allegations cited in Count X use the same operative facts of Counts I (sex discrimination), IV (age discrimination), and VI (retaliation). (*Compare* Dkt. 46 ¶ 265 *with* ¶¶ 30, 37, 117; ¶ 267 *with* ¶¶ 164(a), 184; ¶¶ 269-70 *with* ¶¶ 207-15).

Each allegedly discriminatory event is attributed to multiple characteristics simultaneously, with no factual basis to disaggregate the role of ethnicity from the concededly overlapping sex, age, and disability theories. This is precisely what this Court already condemned: using the *same* factual narrative to assert that *all* of Plaintiff's protected traits were the but-for cause of the same adverse actions, with only a bare label distinguishing the counts. As *Ibarra* explained, "[r]ace-or-ethnicity-based discrimination must have been the determinative reason for" the plaintiff's mistreatment, and "[s]ince [plaintiff] alleges that [she] was discriminated against because of [her] race and [other characteristics], which are not the same, [her] . . . Section 1981 claim[] fail[s]." 2026 WL 1662227, at *6 (citing *Arevalo-Carrasco v. Middleby Corp.*, 851 F. App'x 628, 630-31 (7th Cir. 2021)).

**B. Plaintiff's Allegations Conflate National Origin and Ancestry.**

Even where the second amended complaint attempts to articulate a distinct ethnicity theory, several key allegations sound in national-origin discrimination and other unprotected characteristics,

14

which Section 1981 does not cover. *See Arevalo-Carrasco*, 851 F. App'x at 630. For example, Plaintiff alleges that Defendants treated her "Italian academic credentials, Italian-accented communication, and Italian-trained scientific background as markers of lesser credibility." (Dkt. 46 ¶ 264.) Allegations that an employer discounts "foreign academic credentials" or disfavors a "foreign-trained" scientist are allegations of national-origin bias—they target **where** Plaintiff was educated and trained, not her ancestry or ethnic identity. (*See* Dkt. 41 at 43) (drawing distinction between ethnicity and national origin under § 1981). Similarly, ¶ 265 alleges that Plaintiff's "foreign academic background" was dismissed, which is an allegation of credential-origin bias, not ethnic animus. As *Ibarra* made clear, courts must hew closely to the Supreme Court's definition of "race" under § 1981 as "identifiable classes of persons who are victims of intentional discrimination because of their ancestry or ethnic characteristics,"—a definition that does not extend to national origin, socioeconomic status, or credential pedigree. *Ibarra*, 2026 WL 1662227, at *5 (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)).

To the extent Count X rests on discrimination against Plaintiff's foreign credentials and foreign training rather than her ethnic identity per se, those allegations are not cognizable under Section 1981 and cannot sustain the claim.

### C. Plaintiff Improperly Group Pleads the Individual Defendants.

The Individual Defendant allegations in Count X suffer from the same grouped-pleading deficiency identified in Count VII: ¶¶ 271-277 allege that Defendants Merminga, Fleming, Posen, and Fancsali each approved, permitted, or ratified advancement decisions and adverse actions motivated by Plaintiff's Italian ethnicity. Indeed, these paragraphs recycle the same boilerplate disjunctive language (approving, permitting, ratifying, using, or permitting the use of, his/her authority to participate in, support, ratify, or substantially assist) and do not identify what facts

connect *Italian ethnicity*—as distinguished from sex, age, or protected activity—to any specific decisionmaker's animus.

The second amended complaint does not allege that any Individual Defendant made comments reflecting anti-Italian bias, treated Plaintiff differently from non-Italian employees in comparable circumstances, or harbored animus specifically directed at her Italian heritage (as opposed to her gender, age, or whistleblowing activity). Without such individualized allegations connecting ethnicity to specific decisionmakers, the Section 1981 claim as to the Individual Defendants fails to cross the plausibility threshold.

**D. The Retaliation Theory Fails for the Same Reasons.**

Count X also asserts a retaliation theory under Section 1981, alleging that Defendants retaliated against Plaintiff "for opposing such ancestry/ethnicity-linked discrimination and credential devaluation." (Dkt. 46 ¶¶ 269-70.) This claims fails for the same reasons as the discrimination claim, as the retaliation allegations suffer from the identical commingling defect: the "protected activity" Plaintiff identifies—opposing discriminatory treatment, filing administrative charges, making disclosures to governmental bodies—is the same activity that supports her Title VII, ADEA, ADA, and IHRA retaliation claims in Count VI. (Compare *id.* ¶¶ 269-70 *with* ¶¶ 207-215.) And the "adverse actions" she identifies—the downgraded 2024 evaluation, RIF selection, access cutoff—are identical to those alleged in Counts I, IV, V, and VI. (*Id.* ¶ 270.) The second amended complaint does not allege that Plaintiff specifically opposed *Italian-ethnicity* discrimination (as distinguished from sex, age, disability, or general retaliation), or that any adverse action was taken *because* she opposed ethnicity-based discrimination rather than the overlapping forms of discrimination that she allegedly opposed concurrently.

In addition, this claim relies on patently inadequate legal conclusions. For example, Plaintiff alleges that she "opposed discriminatory and retaliatory treatment connected to her Italian ethnicity

and ancestry" and that "[t]o the extent Defendants retaliated against Plaintiff for opposing such ancestry/ethnicity-linked discrimination and credential devaluation, Defendants violated § 1981." (*Id.* ¶ 269.) She further alleges that "Defendants knew or reasonably understood that Plaintiff's opposition included objections to ancestry/ethnicity-linked discrimination" and that, "[a]fter Plaintiff engaged in such opposition, Defendants escalated adverse actions against her." (*Id.* ¶ 270.) *See Shofner v. Branding Iron Holdings, Inc.*, 2016 WL 879630, at *3 (S.D. Ill. Mar. 8, 2016) (acknowledging that "[n]or in her retaliation claims does she plead anything more than a general allegation of retaliation for reporting some unspecified conduct."); *see also EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781 (7th Cir. 2007) (noting "a plaintiff . . . alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected").

## VII. The Court Should Dismiss Plaintiff's Claim for Breach of Implied Contract (Count XI).

Plaintiff's efforts to salvage her claim for breach of implied contract claim fare no better. To state a claim for breach of implied contract under Illinois law, Plaintiff must allege: (i) the existence of a valid and enforceable contract; (ii) performance by the plaintiff; (iii) breach of contract by the defendant; and (iv) resultant injury to the plaintiff. *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590-91 (N.D. Ill. 2022). An implied contract arises from a "promissory expression which may be inferred from the facts and circumstances and the expressions [on] the part of the promisor which show an intention to be bound." *Doe v. Fertility Centers of Ill., S.C.*, 2022 WL 972295, at *4 (N.D. Ill. Mar. 31, 2022) (alteration in original) (quoting *Est. of Jesmer v. Rohlev*, 241 Ill. App. 3d 798, 803 (1st Dist. 1993)). There also must be a "meeting of the minds or mutual assent as to the terms of the contract." *Nw. Mem'l Healthcare v. Anthem Ins. Cos., Inc.*, 2022 WL 1620025, at *2 (N.D. Ill. May 23, 2022) (quoting *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 515 (7th Cir. 2011)).

The Court dismissed this claim the first time because the RIF Termination Procedure relied upon by Plaintiff disclaims expressly the creation of contractual rights. (Dkt. 41 at 46.) Under *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490 (1987), an implied contract from an employer policy requires a promise clear enough that an employee would reasonably believe an offer has been made, dissemination to the employee, and acceptance through continued employment. And where a policy "contains a disclaimer indicating that the manual promises nothing and does not act as a contract, no enforceable contractual rights will be conferred on the employee." *Ivory v. Specialized Assistance Servs., Inc.*, 365 Ill. App. 3d 544, 546 (2006); *see also Sutula-Johnson v. Office Depot, Inc.*, 893 F.3d 967, 972 (7th Cir. 2018). Because the RIF Termination Procedure expressly states it creates no contractual rights and may be revised at any time, the Court held that Plaintiff could not reasonably interpret it as a binding promise. (Dkt. 41 at 47-48.)

Plaintiff now attempts to circumvent the disclaimer by recharacterizing the source of her alleged implied contract. She now alleges that the implied contract arose not from the RIF Termination Procedure alone, but from a broader "Senior Scientist appointment framework" encompassing her appointment status, Fermilab's Scientific Appointments Policy[2], FCSA governance, "institutional practice," and FRA's "consistent treatment of Senior Scientist appointments as requiring scientific-review protections." (Dkt. 46 ¶ 287.)

---

[2] Plaintiff's reliance on Fermilab's Scientific Appointments Policy further undermines her breach of implied contract claim because, like the RIF Termination Procedure, it also expressly disclaims creating any contractual rights: "The policies in this document are presented as a matter of information only and should not be construed as an employment contract, a guarantee of continued employment or a right to the application of specific employment practices in any given matter. Every employee has the status of 'employee-at-will,' meaning that no one has a contractual right, express or implied, to remain an FermiForward employee. FermiForward may terminate an employee's employment, or an employee may terminate his/her employment, without cause, and with or without notice, at any time for any reason. No supervisor or other representative of FermiForward has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the above."

18

Plaintiff avers that "[a]ny disclaimer in the Scientific RIF Termination Procedure does not defeat Plaintiff's claim at the pleading stage because Plaintiff does not allege that the procedure alone created the implied appointment contract." (*Id.* ¶ 289.) She alleges further that institutional materials described Senior Scientist appointments using terms like "tenure-track-equivalent" and "permanent." (*Id.* ¶ 138.) The second amended complaint also alleges that on November 11, 2024—the day before the RIF—the FCSA Secretary objected that the planned RIF violated the scientific-staff RIF policy because FCSA review and concurrence were required, and that management proceeded without obtaining individualized FCSA review. (*Id.* ¶ 147.) As discussed below, Plaintiff's new novel institutional "framework" theory fails as a matter of law for several reasons.

*First*, the RIF Termination Procedure is not just an ordinary or trivial document among many; it is *the* very document that Plaintiff alleges "evidenced and implemented" her contractual rights. (*Id.* ¶ 288.) A plaintiff cannot evade a disclaimer by characterizing the disclaimed document as merely "evidence" of a broader contract when the disclaimer expressly states that the document creates no contractual rights. *See Sutula-Johnson*, 893 F.3d at 972 ("When an employer's policy states expressly that it does not create contractual rights, there simply is no promise that an employee can reasonably interpret as an offer to be bound."). Indeed, Illinois courts recognize that an employee cannot avoid an express disclaimer by relying on surrounding policies, procedures, or institutional practices to create contractual obligations where the operative document itself disclaims any intent to be bound. *See Moore v. Ill. Bell Tel. Co.*, 155 Ill. App. 3d 781, 784–85 (2d Dist. 1987); *Hogge v. Champion Laboratories, Inc.*, 190 Ill. App. 3d 620, 629 (5th Dist. 1989).

*Second*, the additional materials Plaintiff cites—fellowship materials, URA Early Career Award criteria, Distinguished Scholars materials, and public reporting that use terms like "tenure-track-equivalent" and "permanent"—are general institutional customs that do not create enforceable contractual promises. (Dkt. 46 ¶ 139.) To overcome the presumption of at-will employment,

19

Plaintiff must identify a specific, unambiguous promise of job security. *Duldulao*, 115 Ill. 2d at 490. Plaintiff's alleged "framework" is not a promise at all; it is a gerrymandered concoction of cherry-picked language pulled from various documents, policies, practices, and public-facing materials. The second amended complaint does not identify who adopted the alleged framework, when it was adopted, what precise obligations it imposed, or how those obligations were communicated to Senior Scientists. Such indefinite allegations fall well short of the "specific, unambiguous promise" required under *Duldulao*.

Plaintiff's "tenure-equivalent" theory also fails. As a threshold matter, Plaintiff concedes that Fermilab "does not use the formal word 'tenure'" and she does not allege that "Senior Scientists could never be terminated." (Dkt. 46 ¶¶ 284, 286.) And Illinois law does not permit the leap urged by Plaintiff from informal institutional characterizations to de facto tenure. Again, employment of indefinite duration is presumed to be at-will unless the elements of contract formation are satisfied. *Duldulao*, 115 Ill. 2d at 489–90. And where the operative document contains an express disclaimer, characterizations of other positions as "tenure-track-equivalent" or "permanent" cannot overcome this presumption. *See Sutula-Johnson*, 893 F.3d at 972; *Katz v. Nw. Orthopedics & Sports Med. Ltd.*, 2020 WL 1986965, at *11 (N.D. Ill. Apr. 27, 2020); *Fox v. DuPage Twp.*, 2024 WL 4835902, at *5 (N.D. Ill. Nov. 20, 2024).

Moreover, none of the cited materials were directed to Plaintiff or to Senior Scientists. Each example set forth in ¶ 139 concerns a different position at a different career stage—the Peoples Fellowship, Associate Scientist roles, URA Early Career Awards, and Distinguished Scholars criteria—none of which Plaintiff ever held. (Dkt. 46 ¶¶ 26, 30, 137.) Plaintiff's reliance on the general "institutional usage" of these materials about other positions is not dissemination of a promise; it is an after-the-fact inference drawn from materials about positions Plaintiff never held, at career stages she had long since passed.

***Third***, the two cases Plaintiff cites—*Perry v. Sindermann*, 408 U.S. 593 (1972), and *McConnell v. Howard Univ.*, 818 F.2d 58 (D.C. Cir. 1987)—are inapposite and actually undermine her claim. *Perry* addressed whether a public college professor had a constitutionally protected property interest under the Due Process Clause, not whether the elements of Illinois contract formation are satisfied. 408 U.S. at 599–603. And even under *Perry*'s framework, institutional custom cannot override an express disclaimer. In *Upadhya v. Langenburg*, 834 F.2d 661, 665 (7th Cir. 1987), the court held that a professor's claimed "de facto tenure" based on institutional custom did not create a protected property interest where the university's policies disclaimed it. *McConnell* is equally unavailing. There, a tenured university professor could rely upon a formal faculty handbook to create contractual obligations where that handbook made specific tenure-process promises and, critically, contained no disclaimer. 818 F.2d at 67–69. Here, the RIF Termination Procedure contains an express disclaimer stating it is "not a contract or guarantee of any kind." (Dkt. 46 at 82.) Just as the absence of a disclaimer was dispositive in *McConnell*, its presence is dispositive here. *See Duldulao*, 115 Ill. 2d at 491. Moreover, *McConnell* was decided under D.C. law and addressed a formal tenure system—not the informal "tenure-equivalent" culture Plaintiff alleges. Illinois courts have been far more skeptical of efforts to derive contractual obligations from general institutional practice where a disclaimer is present. *See Sutula-Johnson*, 893 F.3d at 972; *Ivory*, 365 Ill. App. 3d at 546.

***Fourth***, the FCSA Secretary's objection on November 11, 2024, does not in any way transform the disclaimer into a binding promise. An internal disagreement about whether management followed its own policies does not create contractual rights where the operative policies disclaim such rights. Indeed, the employer's reservation of discretion to revise its policies—which the disclaimer expressly preserves—is itself incompatible with the existence of an enforceable contractual commitment. (Dkt. 41 at 46–47 (holding that the RIF Termination Procedure's

disclaimer was sufficient to preclude any reasonable belief that the procedure constituted a binding offer.)

**VIII.    The Court Should Dismiss Plaintiff's Promissory Estoppel Claim (Count XI-A).**

The Court should also dismiss with prejudice Plaintiff's promissory estoppel claim. To establish a promissory estoppel claim, "the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment."). *Newton Tractor Sales v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009). The plaintiff's reliance must be reasonable and justifiable. *A-Abart Elec. Supply v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992).

The Court dismissed this claim previously because the RIF Termination Procedure lacked the clear and definite promise required under Illinois law. (Dkt. 41 at 47-48.) The Court held that the Procedure's disclaimer—which reserves FRA's right to revise its policies at any time—foreclosed the claim, and that "a disclaimer that is effective against a breach of contract is also effective against a claim of promissory estoppel." (*Id.* at 47 (quoting *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1001 (7th Cir. 2000)).) Accordingly, the Court concluded that Plaintiff "cannot establish that the RIF Termination Procedure contained a clear promise." (*Id.* at 48.)

The Court should dismiss this claim because the amended complaint does not cure its fundamental defect:  Promissory estoppel requires an "unambiguous promise." *Newton*, 233 Ill. 2d at 51. Plaintiff does not identify a new promise, written commitment, or representation directed to her that was not before the Court when it dismissed Count XI-A. Instead, it reasserts the same "Senior Scientist appointment framework" theory espoused in her implied-contract claim—encompassing the same appointment status, Scientific Appointments Policy, FCSA governance, institutional practices, and Scientific RIF Termination Procedure (Dkt. 46 ¶¶ 286-99, 302-03)—and simply

recasts these allegations under a theory of promissory estoppel. Thus, rather than identifying a new promise, the second amended complaint essentially asks the Court to treat the same allegations as promissory estoppel if they are found insufficient to create a contract.

Repackaging these same allegations as promissory estoppel does not transform them into an unambiguous promise. As this Court recognized, "a disclaimer that is effective against a breach of contract is also effective against a claim of promissory estoppel." (Dkt. 41 at 47); *see also Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (the Seventh Circuit has noted repeatedly that "promissory estoppel is not a doctrine designed to give a party a second bite at the apple in the event that it fails to prove a breach of contract.") (citation modified). Thus, for the reasons set forth above, the general institutional characterizations, fellowship descriptions, tenure-related language about other positions, and the disclaimed RIF Termination Procedures do not constitute the "clear and definite" promise required under Illinois law. *See Newton Tractor Sales*, 233 Ill. 2d at 51; *Young v. Associated Bank Nat'l Ass'n,* 2025 WL 1282747, at *7 (N.D. Ill. May 3, 2025).

### IX.     The Court Should Dismiss Plaintiff's Retaliatory Discharge Claim (Count XII).

Finally, the Court should dismiss Plaintiff's retaliatory discharge claim. This claim requires an employee to plausibly allege and ultimately prove: (i) the employer discharged the employee; (ii) in retaliation for the employee's activities (causation); and (iii) in violation of a clear mandate of public policy. *See Michael v. Precision All. Grp., LLC*, 2014 IL 117376, ¶ 31. Illinois courts have consistently expressed reluctance to expand the tort of retaliatory discharge, particularly regarding the public policy element. *Hicks v. Resol. Tr. Corp.*, 970 F.2d 378, 381 (7th Cir. 1992).

The Court previously dismissed Count XII because Plaintiff failed to identify a clearly mandated public policy sufficient to support the narrow common law tort of retaliatory discharge. (Dkt. 41 at 51–53.) Specifically, the Court held the IWA "does not constitute a clearly mandated public policy for the purposes of retaliatory discharge because it contains its own deterrent

mechanism." (*Id.* at 51 (citing *Brown v. Biomat USA, Inc.*, 2021 WL 3187599, at *3 (N.D. Ill. July 28, 2021)); *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 508 (1991)).) The Court further noted that Plaintiff "does not point to any other statutes or constitutional provisions to support her asserted public policy" and that "the cases she cites also do not embody the specific public policy she claims." (Dkt. 41 at 52.)

To cure the defect identified by the Court, Plaintiff again relies on the IWA and adds the Illinois Human Rights Act ("IHRA") as a source of a clearly mandated public policy. (Dkt. 46 ¶ 322.) The amended pleading also cites *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124 (1981) and *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372 (1998), and references DOE contractor-employee protection regulations, research-misconduct regulations, and scientific-integrity policies as reflecting the public-policy interests implicated by Plaintiff's discharge. (Dkt. 46 ¶¶ 322-23.)

These amendments fail to salvage the claim. Reliance on the IWA is a nonstarter under the Court's prior holding. (Dkt. 41 at 52); *see also Fellhauer*, 142 Ill. 2d at 508 (a statute does not constitute a clearly mandated public policy for retaliatory discharge where it contains its own remedial mechanisms). Adding the IHRA as a second public-policy source does not help her. Like the IWA, the IHRA contains comprehensive administrative and judicial enforcement mechanisms, including proceedings before the Illinois Department of Human Rights and the Illinois Human Rights Commission, statutory remedies, and private causes of action. *See* 775 ILCS 5/7A-102; 775 ILCS 5/8A-104; 775 ILCS 5/8-111. Under *Fellhauer* and its progeny, Illinois courts have repeatedly refused to recognize a retaliatory discharge claim where the statute asserted as the source of public policy already provides its own enforcement and remedial scheme. Plaintiff's reliance on the IHRA therefore suffers from the same fatal flaw as her IWA-based theory. *See Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 516 (1997) (the IHRA provides the exclusive remedy for civil rights violations cognizable under the Act); *Bannon v. Univ. of Chi.*, 503 F.3d 623, 630 (7th Cir. 2007) (state-law tort claim

24

preempted where it implicates only a duty provided by the IHRA). Indeed, to the extent Plaintiff's retaliatory-discharge claim is predicated on alleged discrimination or retaliation—conduct regulated exclusively by the IHRA—the claim is independently preempted. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).

Plaintiff's references to federal regulations (4 Parts 708 and 733) and DOE policies are equally unavailing. The Illinois retaliatory-discharge tort requires a "clearly mandated public policy" found in "the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer*, 85 Ill. 2d at 130. Federal regulations and DOE policies are not independent sources of Illinois public policy for this tort. *See Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009). Moreover, 10 C.F.R. Part 708 itself provides a detailed administrative whistleblower-protection regime for DOE contractor employees, further undermining any argument that the common law tort is necessary to vindicate those interests. *See Yapp v. Astellas Pharma Glob. Dev., Inc.*, 2015 WL 1326371, at *6 (N.D. Ill. Mar. 20, 2015).

Finally, Plaintiff's cited case law does not foreclose dismissal. Indeed, the Court previously considered Plaintiff's reliance on *Palmateer* and related authorities and found that those cases "do not embody the specific public policy she claims." (Dkt. 41 at 52.) Nothing in the amended pleading changes that conclusion. The Court was correct: *Palmateer* recognized a public policy favoring the reporting of criminal wrongdoing, and *Jacobson* involved retaliation for reporting professional misconduct to licensing authorities. Neither case involved a plaintiff relying on statutory schemes that already provide comprehensive remedies for the alleged misconduct.

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's second amended complaint with prejudice.

Dated: August 14, 2026

Respectfully submitted,

By:  */s/ Daniel A. Kaufman*

Michael Best & Friedrich LLP
Daniel A. Kaufman
444 West Lake Street, Suite 3200
Chicago, IL 60606
Telephone: (312) 222 0800
Fax: 312 222 0818
Email: dakaufman@michaelbest.com

Katarina Dana Stockton
227 West Trade Street, Suite 1500
Charlotte, NC 28202
Email: kdstockton@michaelbest.com

Malin Ann Ehrsam
790 N Water Street, Suite 2500
Milwaukee, WI 53202
Email: malin.ehrsam@michaelbest.com

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

The undersigned certifies that on August 14, 2026, he filed the foregoing brief with the Clerk of the Court using the CM/ECF NextGen system, which will send notice of such filing to the following *pro se* party:

Emanuela Barzi
889 Napa Lane
Aurora, IL 60502
Emanuela.barzi@yahoo.com
(603) 519-5765


/s/ Daniel A. Kaufman
*Attorneys for Defendant*
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606