BC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FILED
8/24/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
MPV

DR. EMANUELA BARZI, an Individual,

Plaintiff,

v.

Case No. 25-cv-09247

FERMI RESEARCH ALLIANCE, LLC,

FERMI FORWARD DISCOVERY GROUP, LLC,

LIA MERMINGA, an Individual,

BONNIE FLEMING, an Individual,

SAM POSEN, an Individual,

STEPHEN GOURLAY, an Individual,

GEORGE VELEV, an Individual,

ALEXANDER ROMANENKO, an Individual,

BETH FANCSALI, an Individual,

Defendants.

Honorable Virginia M. Kendall,

District Judge

Magistrate Judge Beth W. Jantz

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENT

TABLE OF AUTHORITIES ........................................................................................................ iii

CASES ............................................................................................ **Error! Bookmark not defined.**

STATUTES, REGULATIONS, AND RULES ...................................... i**Error! Bookmark not defined.**

I. INTRODUCTION ........................................................................................................................ 1

II. DEFENDANTS' RULE 8 ARGUMENT DOES NOT WARRANT DISMISSAL....................................... 1

III. THE OMITTED CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE .................................... 2

IV. ARGUMENT ............................................................................................................................ 3

A. COUNT V — THE SAC PLAUSIBLY PLEADS INTENTIONAL DISABILITY DISCRIMINATION ......... 3

B. COUNTS VII — THE SAC PLAUSIBLY PLEADS AIDING AND ABETTING UNDER THE IHRA..........4

C. COUNT IX – THE SAC PLAUSIBLY PLEADS FIRST AMENDMENT RETALIATION AND EQUAL PROTECTION UNDER § 1983...........................................................................................................6

D. COUNT X — THE SAC PLAUSIBLY PLEADS DISCRIMINATION AND RETALIATION UNDER § 1981....................................................................................................................................... 8

E. COUNTS XI AND XI-A — THE SAC PLAUSIBLY PLEADS AN IMPLIED CONTRACT OR, IN THE ALTERNATIVE, PROMISSORY ESTOPPEL......................................................................... 11

F. COUNT XII — THE SAC PLAUSIBLY PLEADS RETALIATORY DISCHARGE IN VIOLATION OF CLEARLY MANDATED PUBLIC POLICY ......................................................................... 14

V. CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Anderson v. Modern Metal Products*, 305 Ill. App. 3d 91, 102 (1999) .......... 5

*Arora v. Nav Consulting Inc.*, 2022 WL 7426211, at *2-3 (N.D. Ill. Oct. 13, 2022) .......... 9

*Boswell v. City of Chicago*, 2016 IL App (1st) 150871, ¶ 34 .......... 13

*Bradish v. Aperion Care Marseilles, LLC*, 2025 IL App (3d) 240108, ¶ 16 .......... 15

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) .......... 10

*Darchak v. City of Chicago Board of Education*, 580 F.3d 622, 629 (7th Cir. 2009) .......... 15

*Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820–21 (7th Cir. 2001) .......... 1

*Dennis v. Sparks*, 449 U.S. 24, 27 (1980) .......... 7

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490 (1987) .......... 11–12

*EEOC v. Sis-Bro Inc.*, No. 24-cv-968-JPG, 2025 WL 213992, at *3 (S.D. Ill. Jan. 16, 2025) .......... 9

*Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005) .......... 1

*FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) .......... 7

*Gibson v. Human Rights Commission*, 2025 IL App (4th) 240955-U, ¶¶ 57-58 .......... 4

*Ibarra v. Northwestern University*, 2026 WL 1662227, at *5 (N.D. Ill. June 9, 2026) .......... 9

*Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) .......... 1

*L.P. v. Marian Catholic High School*, 852 F.3d 690, 697 (7th Cir. 2017) .......... 7

*Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) .......... 3

*M.U. v. Team Ill. Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶¶ 46-48 .......... 4–6

*Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) .......... 16

*Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 132–34 (1981) .................................... 16

*Perry v. Sindermann*, 408 U.S. 593, 601-03 (1972) ..................................................................... 12

*Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶¶ 24......14

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015) ............................................................................................................................ 17

*Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) .................................................... 10

*Santiago v. Pivotal Home Solutions, LLC*, No. 25 C 15064, slip op. at 7-9 (N.D. Ill. June 22, 2026) ....................................................................................................................................... 5

*Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) ................................................................. 7

*Stebbings v. University of Chicago*, 312 Ill. App. 3d 360, 367-71 (1st Dist. 2000) ................. 15–16

*United Fire & Casualty Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584 (7th Cir. 2021) ....................................................................................................................................... 9

*Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 510-11 (1985) ......................................... 15–16

*Williams v. Chicago Transit Authority*, 2024 WL 3455022, at *5 (N.D. Ill. July 18, 2024) ............. 4

*Zuccolo v. Hannah Marine Corp.*, No. 1-08-0270, slip op. at 12–13 (Ill. App. Ct. 1st Dist. Dec. 16, 2008) ............................................................................................................................ 16

## STATUTES, REGULATIONS, AND RULES

10 C.F.R. Part 708 (including §§ 708.4, 708.5, 708.16, 708.43) ........................................... 15–16

42 U.S.C. § 1981 ....................................................................................................................... 8–11

42 U.S.C. § 1983 ............................................................................................................................ 6

775 ILCS 5/6-101(B) ................................................................................................................. 4–5

DOE O 473.2A, Protective Force Operations, Attachment 1, ch. I ........ 7

Fed. R. Civ. P. 8 ........ 1–2, 9

Fed. R. Civ. P. 8(d)(2)-(3) ........ 9

Fed. R. Civ. P. 15(a)(2) ........ 17

N.D. Ill. L.R. 5.2(e) ........ 2

# I. INTRODUCTION

Defendants seek dismissal with prejudice of the entire action, including claims this Court has already held sufficiently pleaded. The Court previously held that Counts I, II, IV, VI, VIII, and the failure-to-accommodate component of Count V were sufficiently pleaded, while dismissing other claims without prejudice. (Dkt. 41 at 53.) The SAC preserves the surviving claims and amends those previously dismissed without prejudice. (Dkt. 46 at 1.)

Defendants characterize those amendments as an effort to "revive" dismissed claims and seek dismissal of the SAC under Rule 8. (Dkt. 52 at 1, 3–4.) But their own detailed, claim-by-claim memorandum demonstrates fair notice. As shown below, the SAC materially addresses the deficiencies identified in the Court's prior Opinion, and neither its substance nor its curable formatting defect warrants dismissal with prejudice.

# II. DEFENDANTS' RULE 8 ARGUMENT DOES NOT WARRANT DISMISSAL

Rule 8 requires fair notice, not brevity in the abstract. "[U]nintelligibility is distinct from length." *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013). A complaint that performs Rule 8's notice function cannot be dismissed merely because it contains repetitive or superfluous material. *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820–21 (7th Cir. 2001). Dismissal with prejudice remains appropriate only in the "rare case." *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005).

The SAC provides fair notice —and Defendants' own conduct confirms it. In seeking a 30-day extension, Defendants told this Court that the SAC presented "distinct legal theories and factual allegations that must be carefully evaluated," characterized the pleading as "voluminous and

complex," and sought 25 pages to "adequately present their arguments." (Dkt. 48 ¶¶ 4–5, 11.) They then filed a count-by-count merits brief addressing each challenged Count and the particular allegations claimed deficient. (Dkt. 52 at 3–25.) That conduct is difficult to reconcile with their assertion that the SAC is too unintelligible to satisfy Rule 8. Defendants' separate assertion that most historical allegations were "dismissed as untimely" (Dkt. 52 at 1) overstates the prior ruling: the Court expressly excluded hostile-environment and retaliation claims from the cutoff and relied on earlier conduct in sustaining Counts II and VI. (Dkt. 41 at 23–24, 26–27, 33–36.)

Plaintiff acknowledges that the SAC did not comply with Local Rule 5.2(e)'s 2.0-spacing requirement and will comply going forward. But that curable formatting defect did not impair fair notice. Defendants' prior opening memorandum likewise used single spacing in substantial portions of its substantive Background. (Dkt. 33 at 1–8.) That formatting did not prevent the Court from adjudicating the motion on the merits. A comparable formatting defect does not render the SAC unintelligible or warrant dismissal with prejudice.

Finally, Defendants' "fourth bite at the apple" characterization (Dkt. 52 at 4) conflates the number of pleadings with opportunities to cure judicially identified deficiencies. The FAC was the pleading adjudicated in the May 1 Opinion; the SAC is Plaintiff's first amended pleading filed after that Opinion granted leave to amend. (Dkt. 46 at 1.) Rule 8 therefore provides no basis to dismiss the SAC, particularly claims already held plausible.

## III. THE OMITTED CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE

Plaintiff does not assert Count III or a separate Equal Pay Act claim in the SAC. The Court dismissed both without prejudice. (Dkt. 41 at 17, 21, 53.) Their omission does not convert those dispositions into dismissals with prejudice or affect the distinct claims pleaded in the SAC.

# IV. ARGUMENT

Defendants do not renew count-specific merits challenges to Counts I, II, IV, VI, VIII, or the failure-to-accommodate component of Count V, all of which the Court already held sufficiently pleaded. (Dkt. 41 at 53.) The SAC plausibly pleads each claim now challenged on the merits. Those prior rulings also remain law of the case absent a compelling reason for reexamination, such as manifest error or an intervening change in law. *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007).

## A. COUNT V — THE SAC PLAUSIBLY PLEADS INTENTIONAL DISABILITY DISCRIMINATION

The Court already sustained the failure-to-accommodate component of Count V. (Dkt. 41 at 31–32, 53.) It dismissed the intentional-discrimination theory because the FAC insufficiently connected Plaintiff's PTSD to the alleged adverse actions. (Id. at 30–31.) The SAC directly addresses that deficiency.

The SAC identifies concrete facts supporting disability-related stigma. On information and belief, Velev repeatedly described Plaintiff as "crazy"; HR accepted the same provider note previously rejected and allowed Plaintiff to work from home in September 2024; shortly before her termination, Feher reported that Gourlay, Velev, and Department Head Guram Chlachidze had spoken very negatively about Plaintiff; and, after HR and management knew of Plaintiff's PTSD and accommodation history, managers used terms such as "disruptive," "inappropriate," and "unprofessional" in a manner reinforcing a narrative that Plaintiff was unstable, unreliable, mentally unfit, or not credible. (SAC ¶¶ 63, 96–97, 99-101, 198.) The SAC further alleges that this narrative translated into concrete employment consequences through the August 2024 HR

process, Final Written Warning, downgraded evaluation, RIF selection, and access restrictions. (Id. ¶¶ 99–101, 200–201.) It also alleges, on information and belief, that multiple RIF-selected employees had known disabilities, recent medical leave, or accommodation histories, while the RIF lacked disclosed objective criteria or normal scientific-staff review procedures—circumstantial evidence of discriminatory intent and pretext. (Id. ¶ 83C.)

Defendants focus on ¶201 as conclusory, but that paragraph synthesizes the specific allegations in ¶¶96–97 and 99–101, including Velev's repeated use of "crazy," Feher's report of negative management discussions shortly before termination, disability-stigmatizing behavioral labels, and their alleged conversion into discipline, evaluation, RIF selection, and access restrictions. *Williams v. Chicago Transit Authority*, 2024 WL 3455022, at *5 (N.D. Ill. July 18, 2024), is therefore distinguishable: there, the plaintiff failed to plead facts plausibly connecting the adverse action to disability. Here, the SAC pleads the factual bridge the prior Opinion found missing.

Nor does Defendants' attack on the LITWG agenda defeat the claim. The SAC expressly acknowledges that the agenda does not, standing alone, establish that Plaintiff's medical information was discussed by name. (SAC ¶ 202.) It is corroborative context, not the basis on which the amended causation allegations depend. Count V's intentional-discrimination component therefore should not be dismissed.

## B. COUNT VII — THE SAC PLAUSIBLY PLEADS AIDING AND ABETTING UNDER THE IHRA

The Court previously dismissed Count VII solely for failure to exhaust, a defect Defendants now concede has been cured. (Dkt. 41 at 18–19; Dkt. 52 at 6.) Section 6-101(B) prohibits aiding, abetting, compelling, or coercing another violation of the IHRA. 775 ILCS 5/6-101(B). A plaintiff must allege an underlying wrongful act, awareness of the aider's role, and knowing and

substantial assistance. *M.U. v. Team Ill. Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶¶ 46–48. Several predicate IHRA claims have already been held plausible. (Dkt. 41 at 53.) *Gibson v. Human Rights Commission*, 2025 IL App (4th) 240955-U, ¶¶ 57–58, is therefore distinguishable because no underlying wrongful act was established there.

Defendants' "official capacity" authorities do not establish a categorical bar under § 6-101(B) merely because the alleged aider was an FRA employee. *Anderson v. Modern Metal Products*, 305 Ill. App. 3d 91, 101–02 (1999), and *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶¶ 37–38, addressed direct individual retaliation under § 6-101(A), not the separate aiding-and-abetting prohibition in § 6-101(B). See also *Santiago v. Pivotal Home Solutions, LLC*, No. 25 C 15064, slip op. at 7–9 (N.D. Ill. June 22, 2026). *M.U.*, by contrast, directly applies § 6-101(B) to knowing and substantial assistance. Whether the conduct pleaded here constitutes such assistance cannot be resolved merely by labeling every act "official."

The SAC alleges individualized participation. After receiving Plaintiff's July 31 and August 9 complaints, Merminga allegedly approved or ratified the RIF selection despite a Scientist-RIF framework assigning the Laboratory Director an individualized review role and requiring FCSA review and concurrence that management bypassed. (SAC ¶¶ 72, 76, 144, 147, 222.) That alleged circumvention of FRA's own designated decisional process pleads affirmative participation in conduct the SAC alleges FRA's own Scientist-RIF procedures did not authorize. Fleming received discrimination-related complaints, blocked Plaintiff's invited 2024 presentation even after a no-cost remote option was offered, and participated in the November 14 discussion concerning management's departure from the Scientist-RIF procedure. (Id. ¶¶ 66, 148, 223.) Posen, after being told Plaintiff regarded the August process as retaliatory, allegedly participated in or

supported the evaluation/RIF sequence, on information and belief, and was later identified as responsible for an affiliation-approval step that repeatedly stalled Plaintiff's access requests. (Id. ¶¶ 76, 133–134, 224.) Gourlay excluded Plaintiff from a DOE review, issued the Final Written Warning, and reduced her supervisor's proposed overall rating from "2" to "1." (Id. ¶¶ 71, 79, 90, 225.) Velev publicly demeaned Plaintiff and allegedly supplied or reinforced gender-based, stigmatizing, and retaliatory narratives contributing to discipline, evaluation, and termination. (Id. ¶¶ 74, 95–97, 99, 226.) Fancsali, with notice of Plaintiff's discrimination and retaliation complaints, identified Plaintiff by name to Senior Leadership and, on information and belief, later participated through legal, HR, and cross-functional channels in the adverse sequence alleged. (Id. ¶¶ 65, 93, 227.)

These are defendant-specific allegations of knowledge and affirmative participation, not undifferentiated group pleading. *M.U.,* 2022 IL App (2d) 210568, ¶¶ 47–48, further confirms that knowing participation in a joint discriminatory decision may constitute substantial assistance and cannot, at the pleading stage, simply be recast as passive support. Count VII therefore should not be dismissed.

## C. COUNT IX — THE SAC PLAUSIBLY PLEADS FIRST AMENDMENT RETALIATION AND EQUAL PROTECTION UNDER § 1983

The Court previously dismissed the FAC's First Amendment and Equal Protection theories under § 1983 because the alleged law-enforcement assistance in the RIF did not plausibly connect state actors to the challenged constitutional conduct. (Dkt. 41 at 40–42.) The SAC materially addresses that deficiency. It does not allege that deputies selected Plaintiff for termination; it alleges joint action in FRA's use of county law-enforcement authority to implement or enforce RIF-related site

exclusion, access revocation, no-reentry restrictions, and potential trespass enforcement. (SAC ¶¶ 248, 251–258.)

Newly obtained public records support that theory. Fermilab requested and paid for two uniformed DuPage County deputies at Wilson Hall and Site 38 during the November 12, 2024 RIF, pursuant to a preexisting law-enforcement framework. (Id. ¶¶ 121–124.) Later Kane County materials describe a "long and established history" of law-enforcement coordination with Fermilab and identify DOE O 473.2A, Protective Force Operations, as requiring cooperative agreements for external law-enforcement support and its integration into site operations. (Id. ¶ 126; Ex. H; DOE O 473.2A, Attachment 1, ch. I, at 1-I-3–4.) County records also document Fermilab Security's prior use of deputies to enforce another terminated worker's exclusion through trespass arrest. (SAC ¶ 125-126; Ex. H.) Plaintiff's termination immediately triggered badge, site, computing, and email-access revocation, barred her from returning for her belongings, and was followed by months of efforts to restore access. (Id. ¶¶ 127–130.) These facts plausibly support the "concerted effort" or mutual understanding required by *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019), as to exclusion and access enforcement.

A private person acts under color of state law when she is a "willful participant in joint action with the State or its agents." *L.P. v. Marian Catholic High School*, 852 F.3d 690, 697 (7th Cir. 2017) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). Defendants emphasize that deputies did not decide whom to terminate. (Dkt. 52 at 8–10.) But the pleaded constitutional deprivation also includes law-enforcement-backed exclusion and access restrictions. First Amendment retaliation requires protected activity, a deprivation likely to deter future protected activity, and causation; the deprivation need not independently violate the Constitution. *FKFJ, Inc. v. Village of Worth*, 11

F.4th 574, 585 (7th Cir. 2021). Nor is First Amendment protection confined to public employees: *FKFJ* applied the ordinary retaliation framework to a private business alleging retaliation by government actors. Id. The SAC alleges that Plaintiff spoke as a citizen, outside her ordinary duties, on matters including public safety, misuse of federal funds, discrimination, and governance, including to DOE OIG and other federal officials. (SAC ¶¶ 244–245.)

The Equal Protection theory likewise identifies Plaintiff's sex and Italian ethnicity/ancestry as protected classifications and alleges intentional differential treatment on those protected grounds, including blocked advancement, exclusion, discipline, downgraded evaluation, and RIF selection. (Id. ¶¶ 114–120, 249–250.) The SAC alleges joint state action in implementing or enforcing the resulting exclusion and access consequences and that Defendants knowingly participated in those measures despite the discriminatory course of treatment underlying them. (Id. ¶¶ 251, 260.)

State action remains the threshold disputed issue, but the SAC now pleads concrete facts concerning a paid law-enforcement detail on the RIF date, a preexisting coordination framework, prior trespass enforcement, and Plaintiff's immediate exclusion and access consequences. Defendants' characterization of that coordination as merely "routine security" asks the Court to resolve the pleaded inference in their favor. Count IX should not be dismissed.

## D. COUNT X — THE SAC PLAUSIBLY PLEADS DISCRIMINATION AND RETALIATION UNDER § 1981

The Court previously recognized that discrimination based on Plaintiff's Italian ancestry and ethnicity is cognizable under § 1981, but dismissed Count X because the FAC did not adequately plead but-for causation or properly separate Plaintiff's alternative discrimination theories. (Dkt. 41 at 43–44 & n.6.) The SAC directly addresses both deficiencies.

Count X now expressly alleges that Plaintiff's Italian ethnicity and ancestry were a but-for cause of interference with her contractual rights and pleads that theory "in the alternative to her sex, age, disability, retaliation, and other claims." (SAC ¶268.) Rule 8 permits alternative and inconsistent theories. Fed. R. Civ. P. 8(d)(2)–(3); *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584 (7th Cir. 2021). *EEOC v. Sis-Bro Inc.*, No. 24-cv-968-JPG, 2025 WL 213992, at *3 (S.D. Ill. Jan. 16, 2025), applying §1981's but-for standard, expressly recognizes that alternative but-for theories may be pleaded and distinguishes *Arora* because the multiple causes there were not pleaded in the alternative. Defendants overread *Ibarra*: there, the plaintiff alleged that race and socioeconomic status together caused his mistreatment; the Court did not hold that an expressly pleaded alternative theory is ineffective. *Ibarra v. Northwestern Univ.*, 2026 WL 1662227, at *5–6 (N.D. Ill. June 9, 2026). Here, the SAC does more than append an alternative-pleading label to an undifferentiated theory. It expressly alleges the §1981 counterfactual—that absent Plaintiff's Italian ethnicity and ancestry, Defendants would not have interfered with the contractual rights identified in Count X—and separately pleads Italian-identity-linked facts supporting that inference. (SAC ¶¶264–268.) The use of overlapping events as evidence for alternative claims does not convert the expressly alternative theories into a combined-causation theory.

Defendants' attempt to recast the claim as merely "foreign-credential" or national-origin discrimination also fails. The SAC does not allege that foreign education, standing alone, is protected by § 1981. Rather, it alleges that Defendants knew or perceived Plaintiff as Italian by ancestry and ethnicity and treated her Italian accent, Italian degree, Italian-trained background, and Italian scientific identity as markers of lesser credibility, legitimacy, leadership suitability, and

advancement eligibility. (Id. ¶¶ 114–120, 264–265.) Those allegations do not ask the Court to treat foreign education itself as a protected characteristic; they plead the treatment of Italian-linked characteristics as evidence of discrimination because of Plaintiff's ancestry and ethnic characteristics, which § 1981 protects. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). This Court has already held that Plaintiff's alleged Italian ancestry and ethnicity are cognizable under § 1981. (Dkt. 41 at 43.)

The SAC also does not rely on the Individual Defendants' titles or ¶¶271–277 in isolation. Count X incorporates the preceding factual allegations, which identify defendant-specific conduct involving advancement, exclusion, discipline, evaluation, termination, credibility-related narratives, and post-termination interference, while ¶¶114–120 and 264–268 separately plead the Italian-ancestry/ethnicity theory and the alleged treatment of Italian-linked characteristics as markers of lesser professional legitimacy. (SAC ¶¶114–120, 261, 264–268, 271–277.) Defendants' demand for an express anti-Italian statement from each participant improperly treats direct evidence of animus as a pleading requirement. At this stage, intent may be inferred from the pleaded circumstances and each Defendant's alleged participation; whether those inferences ultimately establish but-for ethnic discrimination is a merits question.

Section 1981 also encompasses retaliation for opposing discrimination protected by the statute. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). The SAC pleads such a theory in ¶¶269–270. But Count X does not depend on the retaliation theory: the discrimination theory in ¶¶262–268 independently alleges intentional interference with Plaintiff's contractual rights because of Italian ethnicity and ancestry. Accordingly, even if the Court concludes that ¶¶269–270 require greater specificity concerning the protected opposition underlying the retaliation theory, that

would provide no basis to dismiss Count X's independently pleaded discrimination theory. At most, any deficiency in the retaliation branch should be addressed separately and without prejudice.

The SAC therefore materially addresses the but-for causation deficiency identified in the prior Opinion and plausibly pleads discrimination under §1981. Count X should not be dismissed; and any perceived deficiency confined to its retaliation theory would not warrant dismissal of the independently sufficient discrimination theory or dismissal with prejudice.

## E. COUNTS XI AND XI-A — THE SAC PLAUSIBLY PLEADS AN IMPLIED CONTRACT OR, IN THE ALTERNATIVE, PROMISSORY ESTOPPEL

The Court previously dismissed Count XI because the FAC relied principally on the Scientific RIF Termination Procedure, whose disclaimer prevented that document, standing alone, from constituting a contractual offer, and did not allege another enforceable agreement governing termination. (Dkt. 41 at 45–47.) The SAC addresses that deficiency by pleading a broader Senior Scientist appointment framework consisting of appointment status, scientific-appointment policies, FCSA governance, institutional practice, and Director- and committee-level procedures. (SAC ¶¶ 137–151, 284–299.)

Plaintiff does not allege guaranteed lifetime employment, but a narrower procedural protection: that FRA would not terminate a Senior Scientist through a RIF without individualized scientific assessment, uniform criteria, and FCSA review or concurrence. (Id. ¶¶ 143–150, 286–297.) Such procedural protections may become contractually enforceable in an otherwise at-will relationship when the requirements for contract formation are satisfied. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490–91 (1987). Nor must an employment-policy promise be individually negotiated or personally addressed to the employee: *Duldulao* expressly recognizes

dissemination of a sufficiently definite policy followed by continued employment as a means of offer and acceptance. Id. at 490. See also *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972) (institutional rules and "mutually explicit understandings" may support an expectation of continued employment). The SAC alleges dissemination and reliance as well, including continued availability of the Scientist RIF procedure and Plaintiff's continued service and professional commitments under the broader framework. (SAC ¶¶ 288, 291.)

The amended theory is supported by more than the RIF document itself. The SAC alleges that Fermilab distinguished Scientist and Senior Scientist appointments from ordinary staff positions, incorporated its Scientific Appointments Policy and FCSA governance into that structure, and historically treated scientific appointments as long-term, tenure-like, permanent, or otherwise protected appointments subject to institutional scientific review. (Id. ¶¶ 137–143, 285–287.) Defendants' contention that some tenure-oriented materials concern titles Plaintiff did not hold therefore misconstrues their pleaded purpose. (Dkt. 52 at 20–21.) Most importantly, immediately before the November 2024 RIF, FCSA objected that individualized review and concurrence were required; subsequent Scientific Advisory Council minutes recorded management's explanation that the procedure – already placed by Plaintiff in the record – had not been revised before the RIF because doing so would have alerted employees to the layoffs. (Prior Opp. Exs. 4–5; SAC ¶¶ 143–150, 288.) These allegations support the pleaded inference that the Scientist-review framework remained operative.

Plaintiff does not ask the Court to revisit its ruling that the RIF Procedure's disclaimer forecloses treating that document, standing alone, as the contractual offer. The different question presented by the SAC is whether the broader Senior Scientist framework independently created enforceable

procedural expectations, with the Procedure serving as evidence of implementation. (Id. ¶¶ 285–290.) The disclaimer addresses the Procedure's private contractual effect; it does not establish that the underlying Scientist-review procedures were optional, inoperative, or irrelevant to that broader implied-agreement theory. FRA identified Plaintiff as a Senior Scientist, placed her within a distinct scientific pay category, maintained Scientist-specific governance and RIF review procedures, including FCSA review that management bypassed, and later acknowledged that the Scientist RIF procedure had remained unrevised because revision would have alerted employees to the RIF. (SAC ¶¶ 29–29A, 137–150.) Defendants now invoke the policy's disclaimer to treat that same framework as legally inert despite its pleaded role in defining Plaintiff's procedural expectations. (Dkt. 52 at 17 n.2.)

The DOE Prime Contract further corroborates the framework's institutional operation. The RIF Procedure provides that Appendix A controls in the event of conflict, while Appendix A § XII requires reductions in employment to follow the contractor's Contracting Officer-approved policies and practices. (Exs. 5–6; SAC ¶¶ 286–290.) Plaintiff does not seek to enforce the Prime Contract as a third-party beneficiary; these provisions instead support the allegation that DOE-compliant or Prime-Contract-implemented personnel procedures formed part of FRA's operative Scientist-reduction framework.

Defendants also quote a post-transition Scientific Appointments Policy referring repeatedly to "FermiForward." (Dkt. 52 at 17 n.2.) That text does not establish the terms governing Plaintiff's FRA employment.

Count XI-A is properly pleaded in the alternative. The SAC identifies the broader framework's alleged promises—individualized assessment, FCSA review or concurrence, uniform criteria, and

established appointment procedures—and alleges detrimental reliance through Plaintiff's continued service and long-term scientific commitments. (SAC ¶¶ 302–309.) Illinois permits contract and promissory-estoppel theories to be pleaded alternatively where formation remains disputed. *Boswell v. City of Chicago*, 2016 IL App (1st) 150871, ¶ 34. Defendants' "second bite at the apple" argument (Dkt. 52 at 23) therefore does not warrant dismissal where the SAC now alleges promises and reliance broader than the disclaimed RIF Procedure alone.

Counts XI and XI-A should not be dismissed.

## F. COUNT XII — THE SAC PLAUSIBLY PLEADS RETALIATORY DISCHARGE IN VIOLATION OF CLEARLY MANDATED PUBLIC POLICY

The Court previously dismissed Count XII because the FAC identified generalized interests in scientific integrity, safety, and compliance without a sufficiently specific source of clearly mandated public policy, and held that the IWA itself could not supply that mandate because it contains its own remedial mechanism. (Dkt. 41 at 51–53.) The SAC addresses that deficiency by identifying specific federal regulations implicated by Plaintiff's disclosures and the recognized Illinois public policy protecting employees who report suspected illegal or improper conduct affecting public welfare. (SAC ¶¶ 321–329.) Although SAC ¶ 322 identifies the IWA and IHRA among sources reflecting relevant public policies, Count XII does not ask the Court to revisit its prior IWA holding and does not depend on either statute as the independent public-policy predicate for the tort.

Defendants contend that federal regulations cannot support an Illinois public-policy claim. (Dkt. 52 at 24–25.) Controlling Illinois authority forecloses that categorical proposition. *Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶24, expressly recognizes *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 510–11 (1985), as finding clearly

mandated Illinois public policy in federal legislation and regulations national in scope. See also *Bradish v. Aperion Care Marseilles, LLC*, 2025 IL App (3d) 240108, ¶16. *Darchak v. City of Chicago Board of Education*, 580 F.3d 622, 629 (7th Cir. 2009), is not to the contrary; it rejected an insufficiently specific educational-quality policy, not federal law categorically as a source of Illinois public policy. Most directly, *Stebbings v. University of Chicago*, 312 Ill. App. 3d 360, 370–73 (1st Dist. 2000), held that a researcher working at Argonne National Laboratory stated a retaliatory-discharge claim based on reporting suspected violations of federal regulations and that the regulations' federal character did not defeat the claim.

The SAC pleads that claim in the distinctive context of FRA's operation of a federally funded national laboratory as DOE's management-and-operations contractor. (SAC ¶¶ 313–319.) Plaintiff invokes the DOE contractual and regulatory framework not as a privately enforceable Prime-Contract claim, but as context bearing on the public interests and concrete obligations implicated by her disclosures. (Id. ¶¶ 312–320.) The regulatory predicate is likewise specific. Section 708.5(a) identifies as protected conduct disclosures to DOE officials, government officials with responsibility for oversight of DOE-site operations, or the employer concerning reasonably believed substantial violations of law, substantial and specific health or safety dangers, fraud, gross mismanagement, gross waste of funds, or abuse of authority. 10 C.F.R. §708.5(a). Section 708.43 imposes an affirmative duty on DOE contractors not to retaliate for such protected conduct. The SAC alleges a June 4, 2024 complaint to DOE OIG concerning hiring irregularities, discrimination, and retaliation, and separate June–July 2024 DOE-facing disclosures concerning waste or misuse of public funds, safety, institutional noncompliance, and other suspected wrongdoing. (SAC ¶¶ 106–110, 324–326.) Plaintiff's Part 708 theory does not depend on

discrimination complaints excluded by § 708.4(a); it rests on the non-discrimination disclosures falling within the regulatory categories identified in § 708.5(a). These allegations identify concrete conduct and regulatory interests rather than the generalized concepts found insufficient in the FAC.

The existence of Part 708's administrative remedy does not itself require dismissal. *Zuccolo v. Hannah Marine Corp.*, No. 1-08-0270, slip op. at 12–13 (Ill. App. Ct. 1st Dist. Dec. 16, 2008), expressly held that "the mere existence of a federal remedy does not preclude a state common-law action for retaliatory discharge." Part 708 itself expressly addresses an employee's election to pursue a remedy under "State or other applicable law" on the same facts. 10 C.F.R. §§ 708.4(c)(3), 708.16. Plaintiff does not contend that Part 708 creates the Illinois tort or that its administrative remedy is irrelevant; rather, *Palmateer*, *Wheeler*, and *Stebbings* supply the Illinois public-policy framework, while Part 708 identifies the concrete federal conduct and anti-retaliation obligations implicated by the pleaded disclosures.

Nor is Count XII an IHRA claim recast as a tort. Plaintiff does not rely on discrimination complaints as the independent public-policy predicate for Count XII. The pleaded non-IHRA disclosures include public-funds misuse, safety concerns, suspected regulatory noncompliance, and other alleged misconduct affecting public welfare. (SAC ¶¶324–326.) For IHRA preemption, *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006), asks whether the duty underlying the tort exists independently of duties created by the IHRA, not whether some facts overlap with discrimination claims. Here, the whistleblowing/public-welfare theory recognized in *Palmateer*, *Wheeler*, and *Stebbings* supplies that independent basis.

Finally, the SAC plausibly alleges causation: Plaintiff's June and July 2024 DOE-facing disclosures were followed by the August HR process, September Final Written Warning, downgraded evaluation, and November 12 termination, and the SAC expressly alleges that but for Plaintiff's protected disclosures FRA would not have selected her for termination. (Id. ¶¶ 327–329.)

The SAC therefore materially addresses the deficiency identified in the prior Opinion by grounding Count XII in established Illinois whistleblower public policy and specific federal laws and regulations implicated by Plaintiff's reports. Count XII should not be dismissed.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss. Counts V, VII, IX, X, XI, XI-A, and XII plausibly state the challenged claims, while the Court already held sufficiently pleaded Counts I, II, IV, VI, VIII, and the failure-to-accommodate component of Count V. (Dkt. 41 at 53.) Count III and a separate Equal Pay Act claim are not asserted in the SAC; their omission does not convert the Court's prior dismissals without prejudice into dismissals with prejudice.

Alternatively, if the Court identifies a remaining pleading deficiency in any challenged claim, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice. Fed. R. Civ. P. 15(a)(2); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

Dated: August 18, 2026

Respectfully submitted,
/s/ Dr. Emanuela Barzi
Dr. Emanuela Barzi, Plaintiff pro se
889 Napa Lane, Aurora, IL 60502 | (630) 518-5765 |
emanuela.barzi@yahoo.com

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2026, she filed the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT with the Clerk of Court using the pro se portal, which will send notification of such filing to all counsel of record:

Daniel A. Kaufman
Malin A. Ehrsam
Katarina D. Stockton
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
dakaufman@michaelbest.com
malin.ehrsam@michaelbest.com
kdstockton@michaelbest.com
*Counsel for Defendants*

---

/s/ Dr. Emanuela Barzi
Pro Se
889 Napa Lane
Aurora, IL 60502
(630) 518-5765
emanuela.barzi@yahoo.com
August 18, 2026